

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

October 20, 2009

Benjamin A. Karfunkel
Herbert New & David W. New, PC
300 Broadacres Drive
Third Floor
Bloomfield, New Jersey 07003
    (*Attorney for Plaintiff*)

Pamela R. Perron
Office of the United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102
    (*Attorney for Defendant*)

    **RE:**   **Frankel v. Peake**
           **Civ. No. 07-3539 (WJM)**

Dear Counsel:

    This matter comes before the Court on Defendant James B. Peake's motion for summary judgment. There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendant's motion for summary judgment is **GRANTED**.

**I.**     **BACKGROUND**

    Plaintiff Joshua Frankel, M.D. brings the instant action against James B. Peake, Secretary of the Department of Veterans Affairs ("VA"), alleging violation of the Age

Discrimination in Employment Act ("ADEA").  29 U.S.C. §§ 621 *et seq*.  This litigation stems from the VA's failure to hire Plaintiff Frankel as the Chief of Ophthalmology at the VA Healthcare Systems treatment facility in East Orange, New Jersey ("VANJ").

The following facts are not in dispute.  In 2006, VANJ began soliciting applications for the position of Chief of Ophthalmology.  (Def.'s Statement of Material Facts ("SMF") ¶ 1;  Pl.'s Resp. to Def.'s SMF ¶ 1.)  Dr. Richard Stark, then Associate Chief of Staff for Ambulatory Care at VANJ, was in charge of the hiring process.  (Declaration of Pamela Perron ("Perron Decl.") Ex. A.)

After posting the job vacancy, Dr. Stark received between nine and twelve applications.  (*Id*.)  From this pool of applicants, three were selected for interview: G.R.J., A.G., and Plaintiff Frankel.[1]  (*Id*.)  Of these three, only Plaintiff Frankel responded to the request and interviewed for the position.  (*Id*.)

Plaintiff Frankel submitted a resume to VANJ as part of his application, which did not list his date of birth.  (Perron Decl. Ex. D.)  In fact, the resume listed few dates; however, it stated that Plaintiff Frankel was recognized as an "Outstanding Teacher of Ophthalmology" at the University of California at Irvine in 1985.  (*Id*.)  In addition, Frankel's resume noted that he did a fellowship in Ophthalmic Plastics at the Massachusetts Eye and Ear Infirmary and a mini-fellowship in Glaucoma at the State University of New York Health Science Center.  (*Id*.)

On September 19, 2006, Plaintiff Frankel interviewed at the VANJ with Dr. Stark and Dr. Marco Zarbin.  (Perron Decl. Ex. A ¶ 10a; Perron Decl. Ex. E at 62: 2-4, 62: 24-63: 4; Declaration Marco A. Zarbin, M.D. ("Zarbin Decl.") ¶5.)  The tone of this meeting was cordial.  (Perron Decl. Ex. E at 65: 4-9.)  At no time during the interview did either Dr. Stark or Dr. Zarbin ask Plaintiff Frankel his age.[2]  (Def.'s SMF ¶ 8; Pl.'s Resp. to Def.'s SMF ¶ 8.)  Further, Drs. Stark and Zarbin did not discuss salary, benefits, or a start date for Plaintiff Frankel.  (Perron Decl. Ex. E at 87: 25-88: 6, 103: 1-3.)

At the conclusion of the interview, Dr. Stark suggested that Plaintiff Frankel register in the VetPro system.  (Perron Decl. Ex. A ¶ 22; Perron Decl. Ex. E at 67: 21-68:

---

[1] Each of these applicants are identified only by their initials in Defendant's papers.  (Def.'s Br. 2 n.1.)

[2] While Plaintiff Frankel's age was not discussed, Frankel freely conceded in his deposition that at the time of the interview, he had white hair and looked like a man aged fifty-five years or older. (Perron Decl. Ex. E at 71: 6-11.)

1; Pl.'s Resp. to Def.'s SMF ¶ 10.)  VetPro is a computerized system used by Defendant to verify the professional credentials and job history of prospective employees.  (Perron Decl. Ex. A ¶ 19; Perron Decl. Ex. G ¶¶ 19, 20; Pl.'s Resp. to Def.'s SMF ¶ 10.)  VetPro processing does not confer appointment or employment.  (Perron Decl. Ex. G ¶ 19; Pl.'s Resp. to Def.'s SMF ¶ 10.)  Instead, the submission of the VetPro form is done before the hiring decision is made and is viewed as one step in the screening process of a prospective employee.  (Perron Decl. Ex. G ¶ 19; Pl.'s Resp. to Def.'s SMF ¶ 10.)

Following the interview, Drs. Stark and Zarbin discussed their impressions.  In particular, they discussed what they considered Plaintiff Frankel's subspecialty to be – oculoplastics. (Zarbin Decl. ¶ 6.)  Dr. Zarbin told Stark that VANJ's staffing needs would be best addressed by hiring an ophthalmologist specializing in anterior segment.[3]  (Zarbin Decl. ¶ 7.)  Since VANJ already had two oculoplastics specialists on staff, Zarbin contended that the needs of VANJ's patients were sufficiently addressed in that area. (*Id.* ¶ 8.)

On September 20, 2006 – the day after his interview – Plaintiff Frankel mailed his VetPro form to Defendant's credentialing office.  (Perron Decl. Ex. E at 68: 9-12.)  The VetPro form sent in by Frankel contained his date of birth.  (Declaration of Benjamin A. Karfunkel ("Karfunkel Decl.") Ex. G.)  Upon receiving Frankel's documentation, an employee in the credentialing office emailed Dr. Stark because she had no record of Frankel.  (Karfunkel Decl. Ex. D.)  Stark responded quickly to this email and told the credentialing employee to "hold off" on processing Frankel's form.  (*Id.*)

When Plaintiff Frankel did not hear back from Dr. Stark or the credentialing office for several weeks, he wrote a letter to Stark inquiring as to the status of his application. (Perron Decl. Ex. A ¶ 20; Perron Decl. Ex. E at 72: 21-24.)  Dr. Stark did not respond. (*Id.*)  Frankel's other follow-up attempts were equally unsuccessful.  Plaintiff eventually learned that he was not selected for the Chief of Ophthalmology position after his Congressman intervened.  Defendant replied by letter to Congressman Wilson on January 24, 2007 to inform him that Frankel did not receive the job.  (Declaration of Benjamin A. Karfunkel, Ex. E.)

On or about December 29, 2006 – approximately three months after Stark told the credentialing office to "hold off" on Frankel's VetPro processing – VANJ received a resume in the mail from Dr. L. (Perron Decl. Ex. F.)  When Dr. L. applied, he was

---

[3] While Plaintiff Frankel highlights that Defendants do not set forth the precise date of this conversation, he does not dispute the substance of what was discussed.  Pl.'s Resp. to Def.'s SMF ¶ 11.

unaware that there was a position open at the VANJ. (Karfunkel Decl. Ex. B at 46: 3-9.) After being interviewed by Drs. Stark and Zarbin, Dr. L. was hired as Chief of Ophthalmology on or around March 1, 2007. (Def.'s SMF ¶ 17.) At the time of hire, Dr. L. was approximately thirty-four years old. (Perron Decl. Ex. F.)

On March 16, 2007, Plaintiff Frankel filed an administrative complaint of employment discrimination. (Perron Decl. Ex. I.) In lieu of filing a formal EEOC complaint, Plaintiff filed the instant action on July 30, 3007, over thirty days after notifying the EEOC of his intent to sue.

## II.   DISCUSSION

The crux of Plaintiff Frankel's complaint is that he was not hired by VANJ due to his age. While Frankel claims that he was given the impression that he would be hired at the end of his job interview, this "job offer" allegedly was rescinded once Frankel's age – sixty-three – was disclosed on the VetPro form. Frankel then filed suit, claiming that the VANJ's failure to hire him was in violation of the ADEA. Defendant now moves for summary judgment.

### A.   Summary Judgment Standard

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate only if, after drawing all reasonable inferences from the evidence in the light most favorable to the nonmovant, *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.   Standard Applied to ADEA Claims

The ADEA prohibits an employer from refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). Where, as here, a plaintiff alleges a disparate treatment claim under this

section of the ADEA, age discrimination may be demonstrated by either direct or indirect evidence. *See, e.g., Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994).

Plaintiff Frankel does not contend that he has presented a direct case of age discrimination. Instead, he suggests that the Court analyze his ADEA claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] *See* Pl.'s Br. 3. Under this familiar test involving indirect proof of discrimination, "the plaintiff bears the burden of proving a relatively simple prima facie case, which the employer must rebut by articulating a legitimate, non-discriminatory reason for its actions." *Torre*, 42 F.3d at 829. Once the employer provides such a justification for its actions, "the presumption of age discrimination created by the plaintiff's prima facie case is dispelled, and the plaintiff must demonstrate that the employer's proffered reasons are pretextual." *Id.* To demonstrate pretext, the plaintiff must discredit the employer's proffered reasons or adduce evidence showing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Id.* at 830.

While application of this framework has been somewhat automatic in this context, the Supreme Court's recent holding in *Gross v. FBL Fin. Serv., Inc.*, 129 S. Ct. 2343 (2009), cast doubt on the continued applicability of *McDonnell Douglas* to ADEA claims. In *Gross*, the Court stated that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* ... utilized in Title VII cases is appropriate in the ADEA context." *Id.* at 2349 n. 2.

After calling into question the use of *McDonnell Douglas*, the Court appeared to end the use of burden-shifting in ADEA cases by stating that the plaintiff retains the burden of persuasion. *Gross*, 129 S. Ct. at 2351. The Court then clarified that this burden of persuasion "is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action ... [a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id*.

Thus, while *Gross* analyzed a mixed-motives claim, its holding that the burden of persuasion lies with the plaintiff to establish that age is the "but for" cause of discrimination appears to apply to all ADEA claims. Reconciling this holding with the burden-shifting *McDonnell Douglas* test is far from straightforward. Other district courts

---

[4] While the *McDonnell Douglas* case itself involved a Title VII race discrimination claim, the Third Circuit has held its burden-shifting framework applicable to ADEA claims as well. *See McKenna v. Pacific Rail Serv.*, 32 F.3d 820 (3d Cir. 1994).

5

that have examined the interaction between *Gross* and *McDonnell Douglas* aptly have noted that this "but for" language mirrors the well-established burden of persuasion *at trial* for ADEA claims. *See Ferruggia v. Sharp Elect. Corp.*, Civ. No. 05-5992, 2009 WL 2634925, at *2 (D.N.J. Aug. 25, 2009) ("[t]o prevail at trial, the plaintiff must prove not that the illegitimate factor was the sole reason for the decision, but that the illegitimate factor was a determinative factor in the adverse employment decision, that is, that *but for* the protected characteristic, the plaintiff would have been hired...") (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

While a plaintiff must demonstrate "but for" causation at trial, the standard to defeat summary judgment is, by rule, less stringent. On summary judgment, it is only necessary for a non-movant to establish that there is a genuine material issue of fact in dispute for trial. Fed. R. Civ. P. 56(e). Thus, to defeat summary judgment on an ADEA claim after *Gross*, it appears that plaintiff needs to show a disputed material fact, which would allow a reasonable jury to determine that age was the "but for" cause of the employment action at issue.

As our sister court has pointed out, "[t]he majority of courts that have addressed this issue post-*Gross* continue to apply the *McDonnell Douglas* framework at the summary judgment stage while also recognizing that at trial the plaintiff bears the burden of persuasion to prove that discrimination was the but for cause of the adverse employment action." *Ferruggia*, 2009 WL 2634925 at *3 (collecting cases). After careful consideration of the *Gross* opinion and its interaction with the Third Circuit's ADEA precedent, this seems like the most reasonable application of *Gross* on summary judgment.

The only issue presented by the instant motion is whether the reasons proffered by VANJ for not hiring Frankel are pretext for age discrimination. Thus, the analysis here begins at stage three of the *McDonnell Douglas* test, where the burden rests on Plaintiff Frankel to rebut the business reasons offered by VANJ. Accordingly, Frankel must demonstrate that there are one or more material issues of fact in dispute to show that age was the "but for" cause of his not being hired by VANJ. In other words, Plaintiff must show either that VANJ's proffered reasons for hiring a younger candidate – Dr. L. – instead of him were pretextual or that the hiring decision was actually motivated by discrimination.

### C. <u>Whether Reasons for not Hiring Plaintiff Were Pretext for Discrimination</u>

As noted above, the parties agree that steps one and two of the *McDonnell*

6

*Douglas* test are satisfied. As such, the analysis here begins at step three: plaintiff must demonstrate that VANJ's proffered reasons for choosing to hire a younger candidate instead of him are pretextual or motivated by discrimination.

Defendant has put forth two business reasons for hiring Dr. L instead of Plaintiff Frankel: (1) Dr. L.'s specialty in anterior segment better served the needs of VANJ's patients and (2) Dr. L. demonstrated more motivation, commitment and vision than Frankel.

In turn, Frankel offers the following in support of his argument that these reasons were pretext for discrimination: (1) his resume "indicate[d] a wide range of specialties, including anterior segment, cataract, general, glaucoma, and plastic/reconstructive" (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 5.); (2) Dr. Stark offered Frankel the job and withdrew the offer once he saw Frankel's age on the VetPro form; (3) the VA failed to inform Frankel that he did not receive the position until Frankel's Congressman intervened; and (4) the VA was desperate to hire someone for the position yet failed to hire Frankel. After careful consideration of these arguments, the Court finds that Plaintiff has not demonstrated that either of the VANJ's proffered reasons were pretextual or motivated by discrimination.

    *1.    Subspecialty Hiring Needs of VANJ*

To rebut Defendant's argument that Dr. L. was selected because his subspecialty better fit the needs of VANJ's patients, Frankel states that his resume also indicates an anterior segment subspecialty. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 5.) Review of Frankel's resume, however, reveals that anterior segment is not presented as an area of specialization. Instead, anterior segment appears in the following fashion at the top of Frankel's curriculum vitae ("CV"):

> **Category:**
> MD:Anterior Segment
> MD:Cataract
> MD:General
> MD:Glaucoma
> MD:Plastic/Reconstructive

(Perron Decl. Ex. D.) Construing this list in the light most favorable to Frankel, it appears to list experience in these five areas but not subspecialty. As Defendants aptly noted, Frankel "presented himself as a jack of all trades and a master of none." (Def.'s Reply 6 n.2.) In addition, the second page of Frankel's CV, on which he further describes his experience, does little to demonstrate a subspecialty in anterior segment. On this

second page, Frankel provides a detailed list of his employment history, which includes fellowships in ophthalmic plastics and glaucoma, as well as surgical experience pertaining to oculoplastics and cataracts. (Perron Decl. Ex. D.)

In contrast, Dr. L. completed an anterior segment fellowship at Johns Hopkins, during which Dr. L. performed an estimated 400 to 500 surgeries. (*See* Zarbin Decl. ¶ 11; Karfunkel Decl. Ex. B at 30: 22-31: 5.) Further, Dr. L. presented himself in his application to VANJ as a "cornea specialist." (Perron Decl. Ex. F.)

Dr. Stark represented that Dr. L's subspecialty in this area filled a need within VANJ's ophthalmology service. (Perron Decl. Ex. A.) Nothing in Plaintiff's record rebuts that this was an important staffing need of the VANJ, nor does Plaintiff rebut that Dr. L. completed a fellowship in anterior segment at Johns Hopkins. Further, Plaintiff's representation that he had experience in anterior segment does not translate into a subspecialty in this area. Accordingly, Plaintiff has not carried his burden of demonstrating that this proffered reason was pretext or motivated by discrimination.

*2.     The "Job Offer"*

In further support of his pretext argument, Frankel contends that Dr. Stark offered him the job but withdrew the offer once he saw Frankel's age on the VetPro form. This argument, while appealing on its face, is belied by the evidence in the record.

First, even viewing the evidence in the light most favorable to Frankel, there is no clear evidence that he was offered the position. Frankel's own statements regarding the alleged "offer" are vague at best. Frankel represents that he was given the impression that he would be hired. (*See* Pl.'s Additional SMF ¶ 3.) Frankel does not contend that he was formally offered the job, nor does he state that Stark or Zarbin discussed salary, benefits, or a start date with him at the interview. (Perron Decl. Ex. E at 87:25-88:6, 103:1-3.) Instead, Frankel submits that he was told by Stark that his qualifications were "acceptable" and that he should submit the VetPro form to the credentialing office pending final consideration of his application. (Perron Dec. Ex. E at 68:19-69:5.) Even viewing Frankel's "impression" in the light most favorable to him, there is insufficient evidence in this record from which to conclude that Frankel was offered the Chief of Ophthalmology position at the time of interview, let alone that this "offer" was rescinded.

Next, Frankel admits that he never heard from Stark after the interview. If Frankel had been hired, it seems logical that Stark would have been in contact. To get around this, Frankel argues that Stark indicated that he would be hired at the interview but then decided to rescind the offer after he saw Frankel's age on the VetPro form. The weakness

in this argument, however, is that Frankel does not establish that Stark saw the VetPro form in the first instance. Instead, Frankel states that he sent the VetPro form to the credentialing employee and after that, Stark told the credentialing office to "hold off" on Frankel's application. While the record includes a copy of Stark's email in which he told the credentialing office to "hold off," this email does not attach the VetPro form or demonstrate in any other way that Stark saw Frankel's age on the form. (*See* Karfunkel Decl. Ex. D) (email chain between Dr. Stark and the credentialing employee). Thus, there is nothing in the record to demonstrate that Stark saw the form, much less decided to rescind a job offer based on the information contained therein.

Finally, it is apparent from the record that Dr. Stark decided not to hire Plaintiff early in the process. The "hold off" email between Stark and the credentialing employee, dated September 27, 2006, demonstrates as much. Thus, Dr. Stark decided not to hire Frankel over three months before Dr. L. sent in his resume in late December. Frankel has not demonstrated that Stark reposted the job or sought out younger candidates during these intervening months. Dr. L., by his own admission, sent in his information unsolicited, without knowledge of any opening or job posting. Based on this uncontroverted record evidence, there is no basis upon which to conclude that Defendant's proffered reasons for hiring Dr. L instead of Plaintiff Frankel are pretext for discrimination based on age.

### 3. *VANJ's Response to Frankel's Inquiries*

Plaintiff next argues that Dr. Stark's failure to contact him or return his calls after the interview demonstrates that the employment decision was motivated by age. Again, there is nothing in the record from which to draw this conclusion; instead, as noted above, failure to contact more logically leads to the conclusion that Dr. Stark simply decided not to hire Frankel. As such, failure to return Frankel's calls speaks to discourteousness or administrative oversight far more than it implies discrimination. *See Dooley v. Roche Lab Inc.*, 275 Fed. Appx. 162, 165 (3d Cir. 2008) (stating that failure to respond to plaintiff after her interview did not cast doubt on defendant's articulated hiring rationale or otherwise suggest that defendant was impermissibly motivated by age).

### 4. *VANJ's Desire to Fill the Vacancy*

Finally, Plaintiff contends that VANJ wished to move quickly to hire a new Chief of Ophthalmology by the end of summer 2006. This argument stems from an email sent by Dr. Zarbin to Dr. Stark in which Zarbin states: "I'd like to move quickly [in terms of hiring] to make sure we have adequate human resources at the VA by this summer." (Zarbin Decl. Ex. A.) Based on this, Plaintiff infers pretext, since VANJ was "desperate"

to fill the vacancy. (Pl.'s Br. 5.) The relevance of this email to pretext and the decision not to hire Frankel is unclear. Frankel's interview occurred on September 16, 2006. If there was a rush to hire by the summer, that deadline had long since passed by the time Frankel interviewed. In addition, the fact that Dr. Stark was willing to wait until September 16th belies any inference of desperation. However, even if VANJ were in a rush to hire, its failure to hire the first and only candidate who came to interview does not imply discriminatory motive or render the proffered reasons incredible.

After review of Plaintiff Frankel's arguments and the facts in the record, the Court finds that Plaintiff Frankel has failed to demonstrate that that VANJ's proffered reasons for not hiring him lack credibility or were pretext for discrimination. Further, Frankel has failed to raise any material issues of fact in dispute necessitating trial. As such, Defendant's motion for summary judgment is granted.

### III.  CONCLUSION

In conclusion, Defendant Peake's motion for summary judgment is **GRANTED**. An Order accompanies this Letter Opinion.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**